UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Natalie Ann Nyhus, f/k/a Natalie Ann Kane,

        Plaintiff,

vs.

The Cities of Blaine, Bloomington, Brainerd, Brooklyn Center, Brooklyn Park, Buffalo, Burnsville, Cloquet, Coleraine, Coon Rapids, Crosby, Crystal, Deephaven, Dundas, Eagan, Eden Prairie, Edina, Faribault, Farmington, Hermantown, Hopkins, Inver Grove Heights, Isle, Le Center, Maple Grove, Maplewood, Minneapolis, Montgomery, Moorhead, Moose Lake, Mound, Moundsview, New Brighton, Onamia, Plainview, Richfield, Rochester, Rosemount, Roseville, Royalton, St. Anthony, St. Francis, St. Louis Park, St. Paul, Shakopee, South St. Paul, Wayzata, West St. Paul, White Bear Lake, Winsted, and Woodbury; Arlington Green-Isle Police Department; Breitung Township; South Lake Minnetonka Police Department; Metro Transit Police Department; Metro Airport Police Department;  the Counties of Anoka, Benton, Carver, Grant, Hennepin, Itasca, Koochiching, McLeod, Meeker, Ramsey, Rice, Sherburne, Steele, Todd, Wabasha, Washington, and Yellow Medicine; Again and Again Auto, LLC; Anoka Motors, LLC; Classic Auto Storage, LLC, d/b/a Downtown Motorcar Sales; Hinkley Chevrolet, Inc.; John Hunt, and John Doe and Jane Doe, 1-500 in their capacities as individuals, employees, officers, and/or supervisors of various government and/or private sector defendants,

Court File No. _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

Defendants.

Plaintiff Natalie Ann Nyhus, f/k/a Natalie Ann Kane ("Plaintiff") brings this action against the above-named Defendants and hereby states and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff is a citizen of the United States, and a lifelong resident of Minnesota.  Plaintiff was known as Natalie Ann Kane prior to her 2012 marriage, and is now known as Natalie Ann Nyhus.

2.     Defendant Cities of Blaine, Bloomington, Brainerd, Brooklyn Center, Brooklyn Park, Buffalo, Burnsville, Cloquet, Coleraine, Coon Rapids, Crosby, Crystal, Deephaven, Dundas, Eagan, Eden Prairie, Edina, Faribault, Farmington, Hermantown, Hopkins, Inver Grove Heights, Isle, Le Center, Maple Grove, Maplewood, Minneapolis, Montgomery, Moorhead, Moose Lake, Mound, Moundsview, New Brighton, Onamia, Plainview, Richfield, Rochester, Rosemount, Roseville, Royalton, St. Anthony, St. Francis, St. Louis Park, St. Paul, Shakopee, South St. Paul, Wayzata, West St. Paul, White Bear Lake, Winsted, and Woodbury are municipalities in the State of Minnesota, which can be sued under Minn. Stat. § 466.01, *et seq.*  These Defendants are collectively referred to herein as "City Defendants."

3.     Defendant Arlington Green-Isle Police Department provides law enforcement services under a joint powers agreement to the Cities of Arlington and Green Isle, Minnesota.  It is referred to herein as the Arlington Green Isle Police Department or one of the "City Defendants."

2

4.     Defendant Breitung Township is a township in the State of Minnesota, which can be sued under Minn. Stat. § 466.01, *et seq.*  It is referred to herein as Breitung Township or one of the "City Defendants."

5.     Defendant South Lake Minnetonka Police Department provides law enforcement services under a joint powers agreement to the Cities of Excelsior, Greenwood, Shorewood, and Tonka Bay, Minnesota.  It is referred to herein as the South Lake Minnetonka Police Department or one of the "City Defendants."

6.     The Metro Transit Police Department provides law enforcement services on behalf of the Metro Transit service in the Minneapolis/St. Paul area.  It is referred to herein as the Metro Transit Police Department or one of the "City Defendants."

7.     The Metro Airport Police Department provides law enforcement services on behalf of the Metropolitan Airports Commission in the Minneapolis/St. Paul area.  It is referred to herein as the Metro Airport Police Department or one of the "City Defendants."

8.     Defendant Counties of Anoka, Benton, Carver, Grant, Hennepin, Itasca, Koochiching, McLeod, Meeker, Ramsey, Rice, Sherburne, Steele, Todd, Wabasha, Washington, and Yellow Medicine are counties in Minnesota, and can be sued under Minn. Stat. § 466.01, *et seq.*  These Defendants also are collectively referred to herein as "County Defendants."

9.     Defendant St. Croix County is a county in Wisconsin.  It is referred to herein as St. Croix County or one of the "County Defendants."

10.     Defendant Again and Again Auto, LLC is a Minnesota limited liability company licensed to do business and doing business in Minnesota.

11.     Defendant Anoka Motors, LLC is a Minnesota limited liability company licensed to do business and doing business in Minnesota.

12.     Defendant Classic Auto Storage, LLC, d/b/a Downtown Motorcar Sales is a Minnesota limited liability company licensed to do business and doing business in Minnesota.

13.     Defendant Hinkley Chevrolet, Inc. is a Minnesota corporation licensed to do business and doing business in Minnesota.

14.     The defendants identified in ¶¶ 10-13 above are collectively referred to herein as "Private Defendants."

15.     Defendant John Hunt is a citizen of the United States, resides in the State of Minnesota, and was, at all material times, employed by the Minnesota Department of Natural Resources ("DNR").  His job duties included safeguarding and monitoring the DPS database used by employees and officers of the DNR.  He is referred to herein as "Hunt" or one of the "Individual Defendants."

16.     Certain of the Defendants John and Jane Does 1-500 are individuals, employed by various cities, counties, state bodies or agencies, other government entities and various private sector entities in the State of Minnesota, who, based upon reliable records obtained from reliable state agency sources have obtained, used or disclosed the driver's license information and Private Motor Vehicle Records of Plaintiff without legal justification or without a proper purpose.  Based upon the access points used by them to

4

gain access to Plaintiff's Private Motor Vehicle Records, they are believed to be residents of the State of Minnesota and are collectively referred to as "Individual Defendants." This Complaint is brought against them in their individual capacities.

17. Certain of the John and Jane Does 1-500 are supervisory personnel of the individual Defendants. These Defendants trained the Individual Defendants how to access Private Motor Vehicle Records and thereafter gave the access to system allowing the "I.D.s" to obtain, use or disclose the Private Motor Vehicle Records of Plaintiff without authority and for impermissible reasons. This Complaint is brought against these Defendants in their individual capacities. They are referred to herein as "Supervisory Defendants."

18. This court has subject matter jurisdiction over this action pursuant to the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq.*; 42 U.S.C. §§ 1983 and 1988; the Fourth and Fourteenth Amendments to the United States Constitution; 28 U.S.C. §§ 1331 and 1343(a)(3); and 39 U.S.C. § 409(a); and has supplemental jurisdiction of claims under Minnesota state law for negligent infliction of emotional distress. The court has original jurisdiction over the federal statutory and constitutional claims under 28 U.S.C. § 1331 and has jurisdiction over the state law claims under 28 U.S.C. § 1367.

19. Venue is proper because the acts or omissions asserted herein occurred in Minnesota and defendants reside in, have their principal business operation in, or are otherwise located in Minnesota.

21395.0001 -- 1589434_1

20.     All of the Defendants obtained, used, or disclosed, or allowed to be obtained, used or disclosed, without authorization the Private Motor Vehicle Records, including driver's license and motor vehicle registration data of Plaintiff at various times and occasions without a proper purpose.

## FACTUAL ALLEGATIONS

21.     Minnesota Department of Public Safety ("DPS") and its divisions, the Driver and Vehicle Services ("DVS") and the Bureau of Criminal Apprehension ("BCA"), collect and maintain driver's license and motor vehicle records for the State of Minnesota, including those relating to Plaintiff.   These records include motor vehicle operator's permit, motor vehicle title, motor vehicle registration and the identification card issued by the DPS, and contain "personal information" and "highly restricted personal information" as defined by 18 U.S.C. § 2725, including the name, driver's license photograph, license number, address, date of birth, sex, eye color, height and weight of the licensee.   The "personal information" and "highly restricted personal information" are referred to collectively herein as "Private Motor Vehicle Records."

22.     Defendant Hunt was the administrative manager of DNR's enforcement division and his duties included acting as a data compliance officer at the DNR and providing open records and data training at DNR.

23.     Plaintiff provided the above information to DPS to obtain a driver's license. This information is protected from access, use and disclosure by the DPPA, 18 U.S.C. § 2721, *et seq*. which only allows the data to be obtained, disclosed or used for a permissible purpose, as that phrase is expressly defined by the DPPA.

6

24.     The Doe Defendants obtained, disclosed or used Plaintiff's Private Motor Vehicle Records on multiple occasions without authorization or consent, for an impermissible purpose, and without a legitimate statutory or business reason or other such justification to do so.

25.     Plaintiff did not authorize or consent to anyone obtaining, disclosing or using her "personal information" or "highly restricted personal information" without a permissible purpose, as defined by the DPPA.

26.     Plaintiff sought an audit of the releases of her Private Motor Vehicle Records from the DVS and BCA, which disclosed numerous incidents of unlawful access to her Private Motor Vehicle Records by these Defendants and employees of various state agencies, cities, counties (including the City and County Defendants), and private businesses (including the Private Defendants).   Summaries of some of the audit information received from the DVS, omitting and redacting what are believed to be legitimate instances of use of the records, are attached hereto as Exhibit 1, and incorporated herein by reference.   Summaries of some of the information received from the BCA, omitting what are believed to be legitimate instances of use of the records, are attached hereto as Exhibit 2 and incorporated herein by reference.

27.     Every one of the lookups set forth in Exhibit 1 and Exhibit 2 were lookups of Plaintiff by her current name or her maiden name.   They do not include any lookups based upon Plaintiff's license plate number, or any other criteria.

28.     The Private Motor Vehicle Records are protected from access, use, and disclosure by 18 U.S.C. § 2721, *et seq.*, the DPPA.

7

29.     The obtaining, disclosing or using of Plaintiff's Private Motor Vehicle Records by Defendants caused physical injury as well as severe emotional distress for Plaintiff.    These physical injuries include, among others, temporomandibular joint dysfunction ("TMJ" a jaw clenching issue), teeth grinding episodes, which have resulted in a chipped tooth, migraine headaches and neck pain.   These ailments have all arisen because of the emotional distress Plaintiff has suffered as a result of the revelation that her Private Motor Vehicle Records were wrongfully and impermissibly accessed by law enforcement on hundreds of occasions.   Plaintiff also now suffers from an ongoing anxiety or mistrust of law enforcement officers.

30.     In addition, Plaintiff has been compelled to sign up for a monthly service that monitors her credit, to make sure that none of her Private Motor Vehicle Records were or are being used to usurp her identity and harm her financially.

31.     The obtaining, disclosing or using of Plaintiff's Private Motor Vehicle Records by Defendants violates numerous statutory and common law rights as set forth below.

32.     Upon information and belief, over a period of time prior to January 14, 2013, Hunt engaged in the unauthorized acquisition of Private Motor Vehicle Records of over 5,000 individuals.

33.     Upon information and belief, Hunt made approximately 19,000 unauthorized queries of DPS records over nearly 5 years.

34.     Upon information and belief, a considerable number of these queries occurred even when off duty, as the system used by the DPS allows any employee who

possessed a password to run a query from any computer at any time; but the means of accessing the database and the database itself are within the control of the DPS.

35.     Upon information and belief, Hunt was the administrative manager of DNR's enforcement division.

36.     Upon information and belief, Hunt was among those in charge of open records and data training at the DNR.

37.     Upon information and belief, Hunt handled public requests for records as a data compliance officer at the DNR.

38.     Upon information and belief, Hunt made several unauthorized accesses of Private Motor Vehicle Records immediately upon leaving a seminar on law enforcement data practices.

39.     Plaintiff never gave her consent for any of the Defendants, or any other party or person to obtain, disclose or use her Private Data for any non-authorized or impermissible purpose.

40.     On or about January 14, 2013, as a result of Hunt's conduct, the DNR sent out approximately 5,000 data-breach letters informing individuals of Defendant Hunt's "unauthorized viewing of private data from your driving and/or motor vehicle records."

41.     On information and belief, most of the approximately 19,000 accesses of the 5,000 individuals were obtained for impermissible purposes under the DPPA.

42.     The DNR has admitted that the accesses were "inappropriate" and "unauthorized" in statements contained in the letters sent on or about January 14, 2013.

21395.0001 -- 1589434_1

43.     DNR has admitted that the accesses were "unauthorized" and in a press release issued on January 15, 2013, admitted that "a DNR employee inappropriately accessed driving license and motor vehicle records without authorization to do so."

44.     The DNR, via the social networking site "Twitter," released a "tweet" stating that the accesses of driver's license data were "unauthorized."

45.     On or about January 16, 2013, the DNR stated through its supervisor that "[i]t became pretty apparent that there was no business-related reason for [the former employee] to be doing this."

46.     Upon information and belief, most of the individuals whose Private Motor Vehicle Records were accessed were women like Plaintiff.

47.     Upon information and belief, Hunt, a Captain with the DNR, knew that his accesses of Private Motor Vehicle Records were unauthorized.

48.     Hunt's conduct in obtaining, disclosing, or using the Private Motor Vehicle Records was for purposes not permitted under the DPPA, and was knowingly done and in willful and reckless disregard of the law.

49.     Defendants' conduct, as described above, has resulted in an increased risk of identity theft and also caused Plaintiff to lose at least a portion of the economic value of her private information.

50.     Many viable methods were and are available to prevent this illegal accessing of private information.

51.     In addition, the various Individual Defendants, City and County Defendants, and the Private Defendants unlawfully obtained, used or disclosed Plaintiffs'

10

Private Motor Vehicle Records without authorization or consent and for impermissible purposes in violation of law.

52.    Any attempts at safeguards put in place by Supervisory Defendants employed by the City and County Defendants; Supervisory Defendants employed by Private Defendants to prevent the Individual Defendants' impermissible access and viewing of Plaintiff's Private Motor Vehicle Records were inadequate to protect the Private Motor Vehicle Records from being unlawfully accessed.

53.    The actions of the Individual, Supervisory, City, County, and Private Defendants in unlawfully obtaining, disclosing or using or allowing the unlawful obtaining, disclosing or using of Plaintiff's Private Motor Vehicle Records is widespread and well known in the law enforcement community and other governmental bodies, as reported in the Minnesota media, and in other cases initiated in this state, some involving some of the same Defendants as herein.  A police officer is reported to have publicly said that the "practice is commonplace" and "every single cop in the state has done this, Chiefs on down."  The widespread misuse of Private Motor Vehicle Records is further verified in a February 2013 report from the Minnesota Office of the Legislative Auditor entitled "Law Enforcement's Use of State Databases ("Auditor's Report").   The Auditor's Report states, in part, that the use of the DPS system for checking drivers licenses decreased beginning in January 2011, but checks through the BCA database increased, probably because equipment needed to use the that database became increasingly available to police officers in patrol cars.

54.    On and before December 2012, sworn peace officers were not required to be trained in the general security or appropriate use of data by the DVS.   While other personnel were provided training, refresher training was not provided.    Civilian employees are required to sign user agreements, but not sworn officers.   No knowledge testing was required.

55.    Auditor's Report further states that while training is required for use of the BCA systems, that training "provides little guidance specific to driver's license data." Auditor's Report, p. 28.   The report further states, "The process for disabling user accounts of people who no longer need access to the DVS Web site is sometimes ineffective, allowing persons to gain access with invalid credentials.   Until July 2012, this deficiency was made worse by DVS allowing accounts to remain dormant for 500 days before inactivating them." *Id*., p. 29.

56.    The Auditor's Report further states:

> In addition, DVS is exercising insufficient control over driver's license photographs.   First, although the division specifies user privileges, users who are granted access to driver's license photographs through the DVS web site have access to all photographs, not just current ones.   Second, during our evaluation, DVS learned that a local records management system used by some agencies automatically stored a copy of a person's current driver's license photograph with incident records.   This practice seems inconsistent with statutory language limiting the permissible uses of driver's license photographs.   Finally, it is possible to save a copy of a driver's license photograph accessed through the DVS Web site or BCA systems to a computer hard drive. Since authorized users can access the DVS Web site from any computer with Internet access, this means they could save photographs to non-work computers.

21395.0001 -- 1589434_1

*Id.*, p. 30 (footnotes omitted).

57.     The Individual Defendants obtained, disclosed or used Plaintiff's Private Motor Vehicle Records without authorization numerous times over a substantial period of time as set forth in Exhibits 1-2 hereto.

58.     Plaintiff did not authorize any of the Defendants to access her Private Motor Vehicle Records, and she is not aware of any legitimate reason any of the Defendants may have had to access her Private Motor Vehicle Records on the dates set forth in Exhibits 1 and 2.

59.     Plaintiff is a highly-visible member of the local media.   Currently, she works as an anchor and reporter for WCCO Television's weekday morning show, and has been in that position since January 2011.  She also appears regularly as a sideline reporter and host for various sports-related television programs on Fox Sports North and the Big Ten Network.   She also has served as an arts and entertainment reporter for the Minneapolis *Star Tribune*.

60.     Over the past decade, Plaintiff has held numerous other high-visibility positions, including stints as a radio host on MyTalk Radio, KDWB, and KFAN, and as a host on CW Twin Cities television station.   She regularly works as a live event host at various sporting events, in including Minnesota Timberwolves games, and charity benefits.  Previously, beginning in 2001, she performed publicly during a five-year stint as a member of the Minnesota Timberwolves Dance Team.

21395.0001 -- 1589434_1

61.    Plaintiff has no criminal record, and to the best of her knowledge has never been a target of any law enforcement investigation, nor as a witness or potential witness to any crime.

62.    Plaintiff has spent her adult life living and working in the Twin Cities area. During that time, she has had occasional contact only with law enforcement personnel from the cities of Minneapolis and Woodbury, and the Metro Transit Police Department.

63.    None of these incidental contacts related to her status as a suspect, potential suspect, witness, or potential witness to any sort of crime, except for two times when she was pulled over by Minneapolis police for alleged minor traffic violations; once in approximately 2009 and once in approximately February 2012.   Neither of those incidents resulted in the issuance of a ticket.

64.    Plaintiff's contacts with the City of Woodbury officials were in connection with the regular renewals of her driver's license; lookups which are not the subject of this lawsuit.

65.    Plaintiff's contacts with the Metro Transit Police Department occurred in 2012, and consisted of conversations with the Metro Transit Police Department's public relations department in connection with a news story with Plaintiff was working on at the time.

66.    Plaintiff's superficial contacts with law enforcement officials associated with the City of Minneapolis would typically occur in connection with security being provided by said law enforcement personnel at various public events, where Plaintiff was either performing as a dancer or host, or reporting as a journalist.

14

67.     Plaintiff has never had any contact or communications of any kind with law enforcement personnel affiliated with the remaining City and County Defendants.

68.     Indeed, Plaintiff has never, to the best of her recollection, even *visited* the following Defendant jurisdictions: Blaine, Brooklyn Center, Brooklyn Park, Buffalo, Burnsville, Cloquet, Coleraine, Coon Rapids, Crosby, Crystal, Deephaven, Dundas, Eagan, Faribault, Farmington, Hermantown, Hopkins, Inver Grove Heights, Isle, Le Center, Maple Grove, Montgomery, Moorhead, Moose Lake, Mound, Moundsview, New Brighton, Onamia, Plainview, Richfield, Rochester, Rosemount, Royalton, St. Francis, Shakopee, South St. Paul, Wayzata, West St. Paul, Winstead, Arlington, Green Isle, Breitung Township, any of the jurisdictions covered by the South Lake Minnetonka Police Department, the counties of Benton, Carver, Grant, Itasca, Koochiching, McLeod, Meeker, Rice, Sherburne, Steele, Todd, Wabasha, and Yellow Medicine, and the County of St. Croix, Wisconsin.  Despite this, agents of law enforcement organizations in those jurisdictions accessed her Private Motor Vehicle Records, using her name, on hundreds of occasions.

69.     Plaintiff has never had any contact or communication of any kind with the Private Defendants, nor has she ever visited the Private Defendants' businesses in her life.

70.     Plaintiff has never had any contact or communication of any kind with Hunt.

71.     None of the Defendants possessed a permissible purpose for accessing Plaintiff's Private Motor Vehicle Records.

21395.0001 -- 1589434_1

72.     Instead, upon information and belief, Defendants' purpose in accessing Plaintiff's Private Motor Vehicle Records was prurient curiosity relating to Plaintiff's status as a highly-visible member of the local media, a professional performer or dancer, as described above.

73.     The illegal, improper and unconstitutional practice of obtaining, disclosing or using of Private Motor Vehicle Records was an official custom or practice that the Individual Defendants, Supervisory Defendants, City and County Defendants, and Private Defendants knew, or should have known, about.

74.     The Individual Defendants, Supervisory Defendants, City Defendants, County Defendants, and Private Defendants failed to take action to safeguard Private Motor Vehicle Records and to monitor and prevent the unlawful obtaining, disclosing or use of Private Motor Vehicle Records, which they knew, or should have known, was occurring.

75.     The actions and inactions of the Individual Defendants, Supervisory Defendants, City Defendants, and County Defendants in failing to safeguard Plaintiffs' Private Motor Vehicle Records were taken under color of state law, and resulted in invasions of Plaintiff's clearly established right of privacy guaranteed by the Bill of Rights under the Fourth and Fourteenth Amendments to the United States Constitution, as well as state and federal law.

76.     Plaintiff is entitled to a determination that her rights have been violated, to an order enjoining further violations, and for monetary damages for these actions and omissions of Defendants.

21395.0001 -- 1589434_1

**Count I:  Violation of the Driver's Privacy Protection Act,
18 U.S.C. § 2721, *et seq.* (Against All Defendants)**

77.    Plaintiff realleges and incorporates the allegations set forth above and further states and alleges as follows as to all Defendants.

78.    Plaintiff provided personal information to the DPS, including her address, color photograph, date of birth, weight, height and eye color, and in some instances, her medical and/or disability information, for the purpose of acquiring and utilizing a State of Minnesota driver's license.

79.    The DVS and BCA databases maintained Plaintiff's Private Motor Vehicle Records.

80.    Plaintiff never provided authorization or consent for the indicated Defendants to obtain, disclose or use her Private Motor Vehicle Records for an impermissible purpose, or to allow anyone to obtain, disclose or use Plaintiff's Private Motor Vehicle Records for other than permissible purposes.

81.    Each of the above-named Defendants has invaded Plaintiff's privacy and violated statutory laws in violation of her rights and interests governed by the DPPA.

82.    Upon information and belief, the above-named Defendants knowingly obtained, disclosed, or used, or allowed others to obtain, disclose or use, Plaintiff's Private Motor Vehicle Records for a purpose not permitted under the DPPA.  18 U.S.C. § 2724(a).

21395.0001 -- 1589434_1

83.    None of these Defendants' activities fell within the DPPA's permitted exceptions for obtaining, using or disclosing of Plaintiffs' Private Motor Vehicle Records.

84.    Instead, Defendants' purpose in accessing Plaintiff's Private Motor Vehicle Records was prurient curiosity relating to Plaintiff's status as a highly-visible member of the local media and a professional performer or dancer, as described above.

85.    Defendants were trained to know and knew that their actions related to Plaintiff's Private Motor Vehicle Records were for an impermissible purpose and in violation of the DPPA.

86.    The Supervisory Defendants knew of, should have known, or recklessly disregarded that the Individual Defendants and Hunt were making these illegal accesses.

87.    By the actions described above, Defendant Hunt and the other Individual Defendants were acting within the scope of their employment when they obtained, disclosed, or used Plaintiff's Private Motor Vehicle Records from the DVS and BCA databases for impermissible purposes.

88.    The Supervisory Defendants knowingly or with reckless disregard trained, failed to train or supervise, authorized, directed, ratified, approved, acquiesced in, committed or participated in obtaining, disclosing or using of Plaintiffs' Private Motor Vehicle Records by Defendant Hunt and the other Individual Defendants.

89.    Their actions constitute knowing disclosures of the Private Motor Vehicle Records of Plaintiff and others under the DPPA.

21395.0001 -- 1589434_1

90.     The actions alleged herein show that the Supervisory Defendants knowingly disclosed the information by granting Defendant Hunt and other Individual Defendants access, in violation of the DPPA, whether or not they knew that Defendant Hunt and the other Individual Defendants obtained, used or disclosed information unlawfully.

91.     A substantial complaint concerning many police departments or other law enforcement agencies is the misuse of private information. This is an established, well-known, and pervasive problem and practice within law enforcement that Commissioner Defendants have not properly addressed or corrected.

92.     Defendant Hunt used the DNR's computers, passwords, and passcodes to access, use or obtain Plaintiffs' Private Motor Vehicle Records.

93.     Other Individual Defendants used their employers' computers, passwords and/or pass codes to access, use or obtain Plaintiffs' Private Motor Vehicle Records.

94.     The Individual Defendants acted with apparent authority. The City Defendants, County Defendants, Private Defendants, and Supervisory Defendants are each vicariously liable for the acts of the Individual Defendants.

95.     The City and County Defendants include experienced, knowledgeable law-enforcement personnel and their supervisors who knew, or should have known, of the pervasive misuse of Private Motor Vehicle Records, and further that obtaining, disclosing, or using Plaintiff's Private Motor Vehicle Records from their equipment, access points and records was done for impermissible and illegal reasons.

96.     Hunt and the other Individual Defendants knew that they had obtained, disclosed or used Plaintiff's personal information from her Private Motor Vehicle Records, and knew that such action was not permitted under the DDPA and violated 18 U.S.C. § 2721, *et. seq.*

97.     The actions of these Defendants was willful or in reckless disregard of the law.

98.     Plaintiff has suffered harm because her Private Motor Vehicle Records have been obtained unlawfully, including the increase risk that her protected information is in the possession of personnel who obtained it for impermissible and illegitimate purposes.  This is precisely the harm Congress sought to prevent by enacting the DPPA and its statutory remedies.

99.     The Defendants each willfully and recklessly disregarded the law, entitling Plaintiff to actual damages, punitive damages, reasonable attorneys' fees and other litigation costs reasonably incurred, and such other injunctive and equitable relief as the DPPA allows and the Court determines to be appropriate.

100.    In addition, Plaintiff is entitled to liquidated damages of at least $2,500 for each violation of the DPPA.

**Count II:  Violation of 42 U.S.C. § 1983 (Against Hunt, City Defendants and County Defendants)**

101.    Plaintiff realleges and incorporates the allegations set forth above and further states and alleges as follows as to Defendant Hunt, the City Defendants, and the County Defendants.

102.    The DPPA establishes that obtaining, disclosing or using an individual's driver's license information without a legitimate purpose constitutes an illegal search under the meaning of the Fourth Amendment to the Bill of Rights of the United States Constitution.

103.    The actions of the above-named Defendants of obtaining, using or disclosing Plaintiff's Private Motor Vehicle Records was unauthorized, unjustified, excessive, and violates the Fourth Amendment, the laws of the United States, and the laws of the State of Minnesota.

104.    The above-named Defendants' actions, which were under color of state law, violated and deprived Plaintiff of her rights to be free from an unconstitutional search.

105.    The aforementioned actions, taken under the color of state law, constituted an invasion or repeated invasions of Plaintiff's clearly established privacy rights, guaranteed by the Bill of Rights and the Fourteenth Amendment to the United States Constitution, the laws of the United States, including the DPPA, and the laws of the State of Minnesota.

106.    The DPPA creates an individual right to privacy in a person's driver's license information, thereby prohibiting the unauthorized access of all persons' information, including Plaintiffs' Private Motor Vehicle Records.

107.    The above-named Defendants, acting under color of state law, knew and should have known that their actions violated and deprived Plaintiff of her clearly-established rights under the DPPA.

21395.0001 -- 1589434_1

108.   The above-named Defendants deprived Plaintiff of her federal statutory rights and civil rights maliciously or by acting with reckless disregard for whether Plaintiff's rights were violated by their actions.

109.   The above-named Defendants were deliberately indifferent to Plaintiff's right to be free from illegal searches, invasions of privacy and the unauthorized accessing of her Private Motor Vehicle Records.

110.   By reason of the forgoing, the above-named Defendants are liable to Plaintiff for her physical and mental suffering in a reasonable amount in excess of $75,000, appropriate injunctive and equitable relief, and her reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

111.   Because these Defendants acted intentionally and in reckless disregard for the rights of Plaintiff, Plaintiff is also entitled to punitive damages.

## Count III:  Violation of 42 U.S.C. § 1983 (Against Supervisory Defendants, City Defendants and County Defendants)

112.   Plaintiff realleges and incorporates the allegations set forth above and further states and alleges as follows, as to the above-named Supervisory Defendants, City Defendants and County Defendants.

113.   The numerous times Plaintiff's Private Motor Vehicle Records were accessed, obtained or used is unfortunately not unique, but rather a glaring example of governmental entities, supervisors, managers, and agents frequently and customarily violating the DPPA by accessing individuals' private information without any legitimate or permitted reason for doing so.

21395.0001 -- 1589434_1

114.   Improper access to driver license information through the computerized information storage systems kept by the state for official purposes is a custom or practice well known to Defendants.

115.   These customs and practices are clear violations of the written rules established and disseminated by the DNR and city and county agencies, but these failures are widely and knowingly disregarded.

116.   Because of the failure of these Defendants to monitor and enforce their rules or federal laws, the aforementioned customs and practices are attributable to them.

117.   These Defendants knew or should have known of this and other unlawful, improper, unjustified, and impermissible access of Private Motor Vehicle Records.

118.   These customs and practices further demonstrate these Defendants' deliberate indifference to the federal statutory and constitutional rights of the citizens and persons, including Plaintiff, whose information has been wrongfully accessed.

119.   These Defendants are liable for the custom and practice of the widespread illegal access to citizens' driver license or other state identification information.

120.   These Defendants are liable for their failure to train, monitor, and supervise those who improperly and unlawfully accessed the private driver license information of citizens, including Plaintiff, without a proper, lawful, permissible, justifiable purpose of doing so.

121.   This pattern of failure to train, monitor, supervise, and discipline demonstrates deliberate indifference to the rights of the citizens and others whose information has been so widely accessed, including Plaintiff.

122.    Upon information and belief, no meaningful attempt has been made by the Defendants to provide redress and assurance to the persons, including Plaintiff, whose information has been wrongfully accessed.

123.    As a direct and proximate result of these acts and omissions, Plaintiff suffered actual damages.

124.    By reason of the forgoing, the Supervisory Defendants, and City and County Defendants are liable to Plaintiff for her physical and mental suffering in a reasonable amount in excess of $75,000, appropriate injunctive and equitable relief, and their reasonable attorney fees pursuant to 42 U.S.C. § 1988.

125.    Because these Defendants acted intentionally and in reckless disregard for Plaintiff's rights, Plaintiff is also entitled to punitive damages.

**Count IV: Negligent Infliction of Emotional Distress (Against City Defendants, County Defendants, Private Defendants and Individual Defendants)**

126.    Plaintiff realleges and incorporates the allegations set forth above and further states and alleges as follows, as to the City Defendants, County Defendants, Private Defendants, and Individual Defendants.

127.    The actions of the above-named Defendants were negligent, were extreme and outrageous, and caused Plaintiff severe emotional distress, as well as physical manifestation due to that distress.

128.    The aforesaid actions of Defendants constituted a direct invasion of Plaintiff's rights.

24

129.   By reason of the foregoing, Plaintiff is entitled to damages against the above-named Defendants, jointly and severally, for her emotional distress and physical harm for negligent infliction of emotional distress in a reasonable amount in excess of $75,000.

## JURY DEMAND

Plaintiff requests a trial by jury for all issues triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Natalie Ann Nyhus f/k/a Natalie Ann Kane seeks judgment in this matter as follows:

1.   Judgment against all Defendants for damages in a reasonable amount in excess of $75,000 as determined by the jury, and reasonable attorneys' fees, costs and disbursements, and prejudgment interest under the DPPA, 18 U.S.C. §§ 2721(b)(1), 2724(b).

2.   Judgment against Individual Defendants, Supervisory Defendants, City Defendants, and County Defendants for violation of 42 U.S.C. § 1983, for actual and compensatory damages in a reasonable amount in excess of $75,000 as determined by the jury, and reasonable attorneys' fees, costs and disbursements.

3.   Judgment against City Defendants, County Defendants, Private Defendants, and the Individual Defendants for compensatory damages, including damages for emotional distress and physical harm in a reasonable amount in excess of $75,000 for negligent infliction of emotional distress.

21395.0001 -- 1589434_1

4.     Injunction against all Defendants prohibiting them from obtaining, using or disclosing Plaintiffs' Private Motor Vehicle Records in violation of the DPPA.

5.     A permanent injunction allowing Plaintiff to use a Post Office box for the addresses on her Minnesota Driver's License or other state-issued license or identification card.

6.     Such further and other relief as the Court may deem just and equitable.

# VERIFICATION

STATE OF MINNESOTA )
                             )ss
COUNTY OF HENNEPIN )

Natalie Ann Nyhus, being duly sworn, deposes and states as follows:

1.      I have read the forgoing Complaint and subscribe on my own behalf, noting that this Complaint has been prepared with the assistance of employees and counsel and on the advice of counsel, and is based upon information obtained from me. The factual allegations in this Complaint are true and correct to the best of my present knowledge, information and belief.

                                          Natalie Ann Nyhus

Subscribed and sworn to before me
this 16th day of October, 2013.

Notary Public

ANGEL R. SNETSINGER
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2017

**HELLMUTH & JOHNSON, PLLC**

Dated: October 18, 2013

By   s/ Russell M. Spence, Jr.
      Russell M. Spence, Jr., ID No. 0241052
      Brian N. Niemczyk, ID No 386928
      8050 West 78th Street
      Edina, Minnesota 55439
      Telephone: (952) 941-4005
      **ATTORNEYS FOR PLAINTIFF**